**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| JESSICA SMITH on behalf of A.S., | ) CASE NO. 1:23-CV-00181-CEH |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) **MEMORANDUM OF OPINION & ORDER** |
| Defendant, | ) |

**I. Introduction**

Plaintiff, Jessica Smith on behalf of her daughter, A.S. ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 5). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On April 11, 2019, Jessica Smith, Claimant's mother, filed an application for SSI on behalf of A.S., alleging a disability onset date of October 28, 2014. (ECF No. 8 at PageID #: 67). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On November 8, 2021, an ALJ held a hearing, during which Claimant was represented by counsel and Claimant's mother testified. (*Id.*). On November 16, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #:

1

67-78). The ALJ's decision became final on December 6, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 24).

On January 31, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12). Claimant asserts the following assignments of error:

> (1) WHETHER THE ADMINISTRATIVE LAW JUDGE COMMITTED REVERSIBLE ERROR IN DETERMINING THAT THE PLAINTIFF HAD A LESS THAN MARKED LIMITATION IN THE DOMAIN OF ATTENDING AND COMPLETING TASKS.
>
> (2) WHETHER THE ADMINISTRATIVE LAW JUDGE COMMITTED REVERSIBLE ERROR IN DETERMINING THAT THE PLAINTIFF HAD A LESS THAN MARKED LIMITATION IN THE DOMAIN OF CARING FOR SELF.
>
> (3) WHETHER EVIDENCE SUBMITTED SUBSEQUENT TO THE HEARING IS NEW AND MATERIAL EVIDENCE WARRANTING REMAND.

(ECF No. 10 at 1).

**III. Background**

   **A. Relevant Hearing Testimony**

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the time of application, Jessica Smith, the claimant's mother, stated that asthma, ADHD, behavioral problems, and IEP were the claimant's disabling conditions (B3E/1). At the hearing, Ms. Smith testified that the claimant had to repeat the third grade. She struggles with math and reading and has an IEP. She needs multiple reminders at home to do chores and her teachers say they have to remind the claimant to stay on task. The claimant gets along "good" with her one-year-old sister, but she fights with her six-year-old brother. Ms. Smith further testified that the claimant's condition has worsened since the last hearing in February 2019. She explained that the claimant hits others, including her, during temper tantrums. The claimant has temper tantrums once a week. During them, she hits others, bites, and throws things. The temper tantrums occur when someone tells her to do something such picking up her room or washing up. During temper tantrums, the claimant has "gone after" her grandfather and pulled her brother's hair and sister's hair. When the claimant is frustrated, she cries "hysterically."

2

(ECF No. 8 at PageID #: 71).

### B. Relevant Evidence

The ALJ also summarized the evidence he found relevant to addressing each of the domains of functioning. Concerning acquiring and using information, the ALJ observed:

> The claimant's Evaluation Team Report (ETR) dated and signed on May 14, 2019, shows the claimant was in second grade and she had never repeated a grade. She was initially identified for special education services in January 2016. Currently, she was performing far below grade-level expectations in reading, writing, and math. The Team determined that the claimant was eligible for special education and related services in the category of Other Health Impaired (Minor) based on the medical diagnosis of attention deficit hyperactivity disorder (B2F/31-60).
>
> The claimant's Report Card in second grade shows grades ranging from A's to C's in MP4 and the claimant was promoted to the third grade (B2F/69).
>
> The claimant's Individualized Education Program effective from April 10, 2019 to April 9, 2020 contained goals in the areas of reading, math, and behavior (B2F/5-18).
>
> On January 24, 2020, the claimant's mother was informed that the claimant was in danger of failing the third grade because the claimant had not reached the required minimum score per the Third Grade Reading Guarantee Law for the current school year. In other subjects, the claimant's performance was satisfactory (B3F/5).
>
> On December 2, 2020, the claimant attended a psychological consultative examination conducted by Michael Faust, PhD, accompanied by her mother. The claimant's mother reported multiple problems including the claimant had learning difficulties, behavioral concerns, was very distracted, struggled to maintain attention, engaged in fighting, talked back to teachers, refused to do her work, failed to turn in her homework, and engaged in aggressive behavior once per week that included hitting or punching her mother. In terms of treatment, the claimant's mother reported that the claimant had been switched to Vyvanse four months ago by her psychiatrist at Beech Brook, and the claimant could focus on her work and listened when she was told to clean her room. However, she then stated that the claimant fought with her to take medication and refused it two times per week. The claimant's mother also said the claimant had a therapist that came to the home weekly, but her mother did not know the therapist's name. Dr. Faust asked what types of things the claimant liked to do, and the mother said, "she put knife in my couch, poke hole in, burn her carpet, write on wall with nail polish or marker." Dr. Faust then asked the claimant what she liked to do, and she said, "draw and play with my dolls and do their hair." Amelia said she wanted to be a "ballerina and a hair stylist" when she was older. On examination, the claimant showed signs of

>being hyperactive in that she was very fidgety and active. She appeared annoyed when her mother described her behavior and she was clearly upset by her mother's descriptions. Even with encouragement, she remained rather oppositional and unhappy, would grimace and frown when asked questions and was an overall negative youth. She was oppositional and frequently refused to respond to questions, but when motivated to respond, she appeared to have full understanding of what she was being asked and could respond in an age-appropriate manner. She was irritable and upset by her mother's descriptions of her behavior and this resulted in increased oppositional tendencies and a negative attitude. Dr. Faust diagnosed the claimant with attention deficit hyperactivity disorder and oppositional defiant disorder (B13F).
>
>. . .
>
>The claimant's Individualized Education Program effective from March 19, 2021 to March 18, 2022 contains goals in the areas of ELA, math, and behavior, and the claimant was repeating the third grade (B16F).
>
>On November 3, 2021, the claimant was still struggling in school, but her teacher was happy with the improvements she had made (B23F/8).

(ECF No. 8 at PageID #: 73-74).

The ALJ next considered the domain of acquiring and using information, noting:

>[T]he claimant has been performing far below grade-level expectations in reading, writing, and math. Despite having an IEP, on January 24, 2020, the claimant's mother was informed that the claimant was in danger of failing the third grade because the claimant had not reached the required minimum score per the Third Grade Reading Guarantee Law for the current school year (B3F/5). The claimant's IEP effective from March 19, 2021 to March 18, 2022 confirms that the claimant was repeating the third grade (B16F/1-2).

(*Id.* at PageID #: 74).

The ALJ then summarized the evidence he found relevant to the domains of attending and completing tasks, interacting, and relating to others, and caring for self:

>[T]he claimant's Individualized Education Program (IEP) effective from April 10, 2019 to April 9, 2020 contained goals in the areas of reading, math, and behavior. In terms of behavior, her teacher noted many more concerns than typical in the following areas: hyperactivity, aggression, conduct problems, attention problems, learning problems, study skills, functional communication, withdraw, and atypicality. Her teacher stated that the claimant was off task 90% of instructional time. She also stated that the claimant was almost always overly active and had

4

trouble keeping her hands and her feet to herself (B2F/15).

On April 30, 2019, the claimant saw Deborah Brewster, MD, at Signature Health. The claimant was transferred to Dr. Brewster because Dr. Smarty had left the agency. The claimant said her mood was "happy" and her mother agreed that she was a happy child. In terms of behavior/aggression, there had been one episode of kicking other students at school. The claimant had some improvement in focus with medication, but she needed further improvement. On examination, the claimant was cooperative, pleasant, and no hyperactivity was observed. Her mood was "happy" and her affect was euthymic. She displayed distractibility throughout the interview. Dr. Brewster diagnosed attention deficit hyperactivity disorder and oppositional defiant disorder. Dr. Brewster increased the claimant's Concerta to 36 mg in the morning (B1F/11-16).

On July 25, 2019, the claimant returned to see Dr. Brewster, accompanied by her mother. The claimant had run out of medication in May 2019, due to transportation issues per her mother. Without medication, the claimant's behavior was impulsive and she was hyperactive. On examination, the claimant was cooperative, pleasant, and no hyperactivity was observed. Her mood was "happy" and her affect was euthymic. She displayed distractibility throughout the interview, but she had no medication that day. Dr. Brewster noted that the claimant's attention deficit hyperactivity disorder symptoms improved with medication, but declined without medication. Dr. Brewster continued Concerta 36 mg (B22F/4-10).

On December 10, 2019, the claimant saw Dr. Brewster. The claimant's mother reported that the claimant ran out of medication yesterday. Dr. Brewster noted that the claimant's mother did not realize that refills had recently been sent in. The claimant's concentration at school had been "great" and her behavior was "great" with medication, but impulsive without medication. The claimant said she was "mad" this morning when her mother made her clean her room, but the claimant's mother said the claimant was "mostly happy" (B22F/18-23).

Significantly, the claimant's IEP Report as of February 4, 2020, shows the claimant had "mastered" or was "making adequate progress" with her behavior goals (B3F/4). In addition, in January 2020, the claimant's math teacher described the claimant as "courteous and cooperative" (B3F/5).

On June 29, 2020, the claimant and her mother saw Dr. Saker at MetroHealth for behavioral concerns. The claimant had been treating at Signature Health, but the claimant's mother was not happy with them and she wanted a second opinion. The claimant's mother did not remember the name of the claimant's medication, but said she was going "good" with it until recently. The claimant's mother said the claimant had been molested by a neighbor a month ago. Dr. Saker looked in OARRS and saw the claimant was on Methylphenidate, last filled in January 2020 (B8F/1-3).

5

On July 20, 2020, the claimant's mother had an appointment with Shivnaveen Bains, MD, of MetroHealth, about the claimant. Due to the pandemic, the appointment was by telephone. Dr. Bains started Vyvanse 20 mg for attention deficit hyperactivity disorder symptoms. Dr. Bains asked the claimant to follow up in six weeks for a child intake (B8F/6-11).

On September 23, 2020, the claimant saw nurse practitioner Erin Gooch at Beech Brook for medication. The claimant's mother said the claimant had been prescribed Vyvanse through MetroHealth, but it was not helping. The claimant was in the third grade and she said she did not like school because it was "boring." She was doing online learning and it was hard to pay attention during online learning. The claimant lived with her mother, baby sister, and grandfather. She said she got along with everyone in the house although she did have sibling rivalry with her 5-year-old brother. On examination, the claimant's mood was euthymic and her affect was appropriate. Ms. Gooch diagnosed attention deficit hyperactivity disorder and posttraumatic stress disorder. She prescribed Vyvanse 20 mg in the morning and Melatonin at bedtime (B11F/22-27).

. . .

The claimant's IEP effective from March 19, 2021 to March 18, 2022 indicates the claimant was "sweet," a "very helpful student," and "always ready to assist peers and adults" (B16F/2). During most of the virtual school year, the claimant's attendance had been inconsistent (B16F/3). It was noted that the claimant seemed to focus better when she had her headphones on and the claimant was capable of doing better in class if she could just make sure to come to class regularly and complete work (B16F/2).

On June 10, 2021, the claimant saw Ms. Gooch for medication management. The claimant's mother reported that the claimant had some issues in daycare with trying to fight and the claimant had significant aggression towards her siblings. Ms. Gooch started Aripiprazole (Abilify) (B18F/15-18).

On August 17, 2021, the claimant saw Ms. Kazmierczak. The claimant said her mood was "good," she helped around the house, and she denied conflicts with her siblings. Ms. Kazmierczak noted that the claimant remained on task to the best of her ability since the claimant was assisting in caring for her little sister during the session. The claimant was motivated to continue working on behaviors in the classroom setting (B21F/4-5).

On November 3, 2021, the claimant had an appointment with Ms. Gooch. The claimant was doing "fine" at home behaviorally. On examination, the claimant's rapport was appropriate; her mood was euthymic; and her affect was appropriate. Ms. Gooch prescribed Abilify, Guanfacine, and Melatonin (B23F/6-9).

On November 5, 2021, Ms. Kazmierczak noted that the claimant was playful,

6

> laughed often, but had difficulty staying on task. The claimant was receptive with the interventions provided by Ms. Kazmierczak although she became off task and had difficulty with redirection (B23F/4-5).

(*Id.* at PageID #: 74-77).

The ALJ also summarized additional observations from Jillion Kazmierczak, claimant's therapist:

> [O]n June 8, 2021, Ms. Kazmierczak noted that the claimant was getting along with peers at daycare and her siblings at home. Although the claimant said her mood was "good," Ms. Kazmierczak noted that the claimant appeared anxious and she fidgeted, but only "at times." At first, the claimant had difficulty with staring off and saying, "I don't know," but Ms. Kazmierczak utilized different strategies to engage the claimant, and the claimant was receptive to this and was not oppositional. She appeared to have difficulty identifying different thoughts/feelings in relation to different emotions although she stated, "I got mad when my brother hit the baby" (B18F/19- 20). On June 18, 2021, Ms. Kazmierczak noted that the claimant appeared cheerful throughout the session and the claimant remained on task. The claimant reported a recent physical altercation at daycare while watching a smaller child with a peer. The claimant was triggered by the peer who stated "mind your own business" when the claimant tried to encourage the smaller child not to go down the slide. There was hair pulling, but the claimant said she and the peer were friends again. Ms. Kazmierczak explored coping skills with the claimant (B18F/13-14). On June 21, 2021, Ms. Kazmierczak visited the claimant at home as opposed to the daycare center because the daycare was closed. She noted that the claimant had difficulty remaining on task "due to her little sister playing with the door" throughout the session. The claimant said she was following her grandfather's rules and she enjoyed spending time with her father (B18F/11- 12).

(*Id.* at PageID #: 72).

**IV.  The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

1. The claimant was born on . . . 2011. Therefore, she was a school-age child on April 11, 2019, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since April 11, 2019, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder, post-traumatic stress disorder, oppositional defiant disorder, borderline intellectual functioning, specific learning disability, and adjustment disorder (20 CFR 416.924(c)).

7

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

(ECF No. 8 at PageID #: 68-70, 78).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

An individual under the age of eighteen is considered disabled if she "has a medically

8

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). The regulations provide a three-step process for evaluating a child's disability claim. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.* at § 416.924(b). Second, the ALJ must establish whether a claimant has a severe medically determinable impairment. *Id.* at § 416.924(d). Third, the ALJ must consider whether the claimant has an impairment or combination of impairments that meets or medically equals the listings. *Id.* If a severe impairment does not meet or medically equal any listings, the ALJ must decide whether it results in limitations that functionally equal the listings. *Id.* at § 416.926a.

### C. Discussion

Claimant raises three issues on appeal, arguing that (1) the ALJ erred in determining that Claimant had less than a marked limitation in the domain of attending and completing tasks; (2) the ALJ erred in determining that Claimant had less than a marked limitation in the domain of caring for self; and (3) evidence submitted after the hearing is new and material evidence warranting remand. Because the first two arguments raise similar issues, the Court will address them together.

#### 1. Substantial evidence supports the ALJ's conclusion of less than marked limitations.

Claimant argues that "the ALJ erred when he determined that the domains of attending and completing tasks and caring for self were less than marked for A.S." because the "evidence, including both school and medical records, supports a much more severe limitation than a less than marked limitation" and the ALJ "cherry picked the records" to reach his conclusion. (ECF No. 10 at 14). Claimant proceeds to summarize the medical evidence she believes supports a finding of

marked limitations in these areas. (*Id.* at 16-17, 19-20). Claimant also argues that "Therapist Kazmierczak, an individual with thorough knowledge of this child, offered an opinion that A.R. [sic] was markedly limited in attending and completing tasks (A.R. 882) [as well as markedly impaired in caring for self] and this opinion was supported and consistent with the medical records." (*Id.* at 17, 19).

The Commissioner responds that "Plaintiff's argument attempts to turn the standard of review on its head" because "[t]he issue is whether substantial evidence supports the ALJ's finding – in this case, that Claimant had less than marked limitation in in [sic] those two Domains – not whether there is support for some alternative finding." (ECF No. 12 at 7). The Commissioner argues that "even if, as Plaintiff contends, the evidence could be read to support a finding that Claimant had marked limitation in Attending and Completing Tasks and Caring for Self, such a showing is not sufficient to justify remand." (*Id.*). The Commissioner argues that "the ALJ identified substantial evidence in support of his finding that Plaintiff's impairments did not functionally equal a Listing" such that his decision should be affirmed. (*Id.* at 9).

The Court agrees with the Commissioner that Claimant cannot show that remand is warranted simply by pointing to evidence in the record that supports a different conclusion than that reached by the ALJ. "The existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination." *Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)). Thus, the relevant question is whether substantial evidence supports the ALJ's finding of less than marked limitations in the domains of attending and completing tasks and caring for self.

The domain of attending and completing tasks considers how well the claimant can focus

and maintain attention, and how well she begins, carries through, and finishes her activities, including the pace at which she performs activities and the ease with which she can change them. 20 C.F.R. § 416.926a(h). The regulations provide that a school-age child such as Claimant should be able to focus her attention in a variety of situations in order to follow directions; remember and organize her school materials; complete classroom and homework assignments; concentrate on details and not make careless mistakes in her work beyond what would be expected in children without impairments; change activities or routines without distracting herself or others; stay on task and in place when appropriate; sustain attention well enough to participate in group sports; read by herself; complete family chores; and complete a transition task (such as changing clothes after gym, being ready for the bus, or changing classrooms) without extra reminders or accommodation. *Id.* at § 416.926a(h)(2)(iv).

The domain of caring for self considers how well a claimant maintains a healthy emotional and physical state, including how well she gets her physical and emotional wants and needs met in appropriate ways; how she copes with stress and changes in her environment; and whether she takes care of her own health, possessions, and living area. *Id.* at § 416.926a(k). School-aged children should be independent in most day-to-day activities, although they may still need to be reminded to complete tasks routinely; recognize that they are competent in some activities and have difficulty with others; be able to identify circumstances when they feel good or bad about themselves; begin to develop understanding of right and wrong, as well as acceptable and unacceptable behavior; and begin to develop control over behavior, including avoiding behaviors that are unsafe and imitating behavior of adults they know. *Id.* at § 416.926a(k)(2)(iv). A "marked" limitation occurs when a claimant's impairments interfere seriously with her ability to independently initiate, sustain, or complete activities. *Id.* at § 416.926a(e)(2)(i).

11

Here, the ALJ found that Claimant had "less than a marked" limitation in each of these domains of functioning. (ECF No. 8 at PageID #: 74). The ALJ explained his decision:

> Regarding the domains of attending and completing tasks, interacting and relating to others, and caring for self, the medical evidence of record clearly shows that the claimant's symptoms and behaviors improve with medication (see above). The claimant's mother testified that the claimant has temper tantrums once a week involving hitting others, biting, and/or throwing things. However, the treatment notes and school records do not support this frequency of temper tantrums. Similarly, the treatment notes and school records do not support the claimant crying "hysterically" when frustrated. The claimant's IEP effective on March 19, 2021 indicated the claimant was "sweet," a "very helpful student," and "always ready to assist peers and adults" (B16F/2). The IEP also indicated that during most of the virtual school year, the claimant's attendance had been inconsistent (B16F/3) and the claimant was capable of doing better in class if she could just make sure to come to class regularly and complete work (B16F/2). In August 2021, it was noted that the claimant was assisting in caring for her little sister (see above). During the relevant timeframe, the claimant has not been psychiatrically hospitalized and there are no Emergency Department visits for acute psychiatric symptoms or behavioral issues. The claimant has not required or received intensive outpatient mental health services. The claimant receives therapy on a regular basis from a social worker and she is "receptive" to therapy. Although the claimant receives therapy on a regular basis from a social worker, she sees the psychiatrist on an infrequent basis. From all of this, I find that the claimant's symptoms behaviors, and limitations are not as severe as alleged. Furthermore, I find the claimant has "less than a marked" limitation in the domains of attending and completing tasks, interacting and relating to others, and caring for self.

(*Id.* at PageID #: 77-78).

The Court concludes the ALJ's finding of less than marked limitations is supported by substantial evidence. The ALJ noted that the record reflected that Claimant's behavior and focus improved with medication. (*Id.* at PageID #: 75; *see id.* at PageID #: 448, 556, 1024, 1037). The ALJ also cited reports that Claimant was happy, cooperative, pleasant, sweet, and helpful. (*Id.* at PageID #: 75-76; *see id.* at PageID #: 447, 803, 1024, 1037-38). The ALJ noted that Claimant helped around the house and cared for her sister. (*Id.* at PageID #: 77; *see id.* at PageID #: 1003-04). The ALJ cited an IEP report that indicated Claimant had either "mastered" or was "making adequate progress" with behavioral goals geared towards keeping her hands to herself and staying

12

on task. (*Id.* at PageID #: 75; *see id.* at PageID #: 538). The ALJ also relied on the State agency opinions which found "less than marked" limitations in each of the two challenged domains. (*Id.* at PageID #: 71-72; *see id.* at PageID #: 262-63, 270-72). Thus, substantial evidence supports the ALJ's decision.

While Claimant points to Kazmierczak's findings of marked limitations to support a different conclusion, the ALJ considered this opinion even though Kazmierczak was "not an acceptable 'medical source' under the current SSA rules" but ultimately found this opinion "not fully persuasive." (*Id.* at PageID #: 72). To the extent Claimant argues the ALJ cherry-picked the record, it appears that such amounts to a request that the Court reweigh the evidence. However, it is not the role of this Court "to reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Because substantial evidence supports the ALJ's determination, the decision must be affirmed even if potentially conflicting evidence exists. *Preston*, 2023 WL 4080104, at *3.

**2. Remand for the consideration of new evidence is not warranted.**

Claimant argues that "[r]ecords were submitted after the hearing containing new and material evidence warranting remand." (ECF No. 10 at 20). Claimant points to a "school IEP which occurred just five months after the ALJ's decision" and asserts that the report shows "A.S.'s goals included managing conflicts on a daily basis without prompts and independent of adult support and to engage in her assignments/tasks within one minute of receiving the assignment/tasks" and "A.S's counselors stated that she had not developed the necessary skills to express her emotions."

13

(*Id.* at 20-21). Claimant argues that "[t]his directly bears upon the focal issues in this case as to the domains of A.S. being able to attend and complete tasks and in caring for self." (*Id.* at 21).

The Commissioner responds that Claimant's "argument fails because the evidence is not material; she has not shown or even meaningfully argued that there is a reasonable probability that the evidence would have changed the decision if it had been presented to the ALJ." (ECF No. 12 at 10). The Commissioner argues that the evidence is cumulative of evidence the ALJ already considered such that it is not material. (*Id.*).

> A remand under sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence is warranted only where a claimant presents new and material evidence and shows good cause for failing to present the evidence to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is material only if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been presented. *Id.* A claimant establishes good cause by providing a reasonable justification for failing to obtain and present the evidence at the hearing before the ALJ. *Id.*

*Heart v. Comm'r of Soc. Sec.*, No. 22-3282, 2022 WL 19334605, at *3 (6th Cir. Dec. 8, 2022).

The Court agrees with the Commissioner that a remand is not warranted here. The cited record is from a March 17, 2022 annual review of Claimant's IEP. (ECF No. 8 at PageID #: 49). As noted by the Appeals Council, the ALJ decided Claimant's case through November 16, 2021 such that the "additional evidence does not relate to the period at issue" and is properly considered in a new application. (ECF No. 8 at PageID #: 25). Claimant argues that "the IEP report was based on that proceeding school year which included the relevant time period before the ALJ." (ECF No. 10 at 21). The report addressed approximately three months of the relevant period (September to November 2021) but also included five months *after* the relevant period. In fact, in setting new goals, the report sets forth Claimant's condition at the time the report was authored. (*See* ECF No. 8 at PageID #: 49 ("Now, [Claimant] is . . . ..")). Thus, the Court concludes that this evidence is not material to the current claim. *See Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th

14

Cir. 1986) (evidence of claimant's condition after ALJ's decision did not warrant remand). To the extent the evidence does address the relevant period, the Court agrees that it is cumulative of that already in the record. The ALJ considered a previous IEP report from March 2021 which also documented Claimant's difficulty focusing and included goals to address her focus and ability to regulate emotions. (ECF No. 8 at PageID #: 811).

The Court concludes the new evidence is either cumulative of that already in the record or addresses a time frame after the ALJ's decision such that it is not material. Accordingly, remand for consideration of the evidence is not warranted. *Heart,* 2022 WL 19334605, at *3.

## VI. Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Claimant benefits. Plaintiff's Complaint is DISMISSED.

Dated: January 17, 2024

                                                        s/ *Carmen E. Henderson*
                                                        CARMEN E. HENDERSON
                                                        U.S. MAGISTRATE JUDGE